UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICIA KENNEDY,

    Plaintiff,

v.   Case No. 6:18-cv-00688-CEM-TBS

MYSTIC DUNES LLC, a foreign
limited liability company,

    Defendant.
_____/

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, Mystic Dunes LLC ("Mystic Dunes" or "Defendant"), replies to Plaintiff's Response (Dkt. No. 18; "Response") to Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (Dkt. No. 17; "Motion"). Dismissal, with prejudice, is warranted.[1]

In her Response, Plaintiff for the first time identifies the particular statutory provision(s) under which she purports to bring this ADA discrimination lawsuit. *See* Resp. at 2-3 ("Plaintiff's claims are based on . . . 42 U.S.C. Section[s] 12182(a) . . . [and] 12182(b)(2)(A)(ii)."). Section 12182(b)(2)(A)(ii) states that discrimination under Section 12182(a) includes

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, . . . ;

42 U.S.C. § 12182(b)(2)(A)(ii). According to Plaintiff, the Department of Justice (the "DOJ") interpreted Section 12182(b)(2)(A)(ii) when it promulgated 28 C.F.R. § 36.302(e)(1)(ii) (the

---

[1] Plaintiff submits a sworn statement in support of her opposition, *see* Resp. at 1, Ex. A (Dkt. No. 18-1), but such evidence cannot be considered on a motion to dismiss under Rule 12(b)(6) or under a Rule 12(b)(1) facial attack as it is beyond the four corners of the Amended Complaint. Thus, the statement should be disregarded and stricken.

"Regulation"), which states,

> (e)(1) *Reservations made by places of lodging.* A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—
> . . .
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

28 C.F.R. § 36.302(e)(1)(ii). Plaintiff alleges that Mystic Dunes' website (the "Website") violates the Regulation by not providing enough details about the Mystic Dunes Resort's accessible features, *see* Am. Compl. ¶ 10, and therefore violates Section 12182(b)(2)(A)(ii).

## I.   PLAINTIFF LACKS STANDING UNDER THE ADA

### A.   The ADA does not recognize an Internet-based injury under these circumstances.

In her Response, Plaintiff clarifies that her "injury-in-fact" occurred when she visited the Website, not the Resort. Resp. at 10, 13. In other words, she encountered the alleged discrimination exclusively while sitting at a computer in her home. *Id.* at 8.

Plaintiff's Internet activity at home cannot establish an injury under the ADA because the ADA only prohibits discrimination by a "place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff is incorrect that the Website itself is a place of public accommodation. *See* Resp. at 10, 12 (calling it a "discriminatory website" and arguing that a website "is a service, privilege, advantage or accommodation in and of itself"). The ADA specifically lists which "private entities are considered public accommodations" under Title III and nowhere includes websites. *See* 42 U.S.C. § 12181(7) (listing "an inn, hotel, motel, or other place of lodging" and

2

eleven other categories of public accommodations).[2] The Website is not a "place of lodging" or any other type of public accommodation under the plain text of the ADA. *See Gomez v. Bang & Olufsen America, Inc.*, No. 1:16-cv-23801-LENARD, 2017 WL 1957182, at *2 n.2 (M.D. Fla. Feb. 2, 2017) ("the ADA does not list a website as a place of public accommodation.").

District courts in Florida have uniformly rejected Plaintiff's argument that a website is a place of public accommodation in and of itself. *See, e.g.*, *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1315-19 (S.D. Fla. 2002); *Gomez*, 2017 WL 1957182, at *3; *Kidwell v. Florida Comm'n on Human Relations*, No. 16-403, 2017 WL 176897, at *4 (M.D. Fla. Jan. 17, 2017). Instead, for Title III to apply to a website, the plaintiff must show a sufficient "nexus" between the alleged Internet-based injury and the enjoyment of goods, services, facilities, privileges, advantages, or accommodations at the physical location of a public accommodation. *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017); *Access Now*, 227 F.Supp.2d at 1319-21; *Haynes v. Interbond Corporation of America*, No. 17-CIV-61074, 2017 WL 4863085, at *5 (S.D. Fla. Oct. 16, 2017); *Gomez*, 2017 WL 1957182, at *3.

Although undecided, the Eleventh Circuit has also suggested, in dicta, that there are only two ways Title III could apply to websites – "either because websites are themselves places of public accommodation or because they have a sufficient nexus to such physical places of public accommodation." *See* Resp. at 14 n.6 (quoting *Access Now, Inc. v. Southwest Airlines Co.*, 385 F. 3d 1324, 1334-35 (11th Cir. 2004)). Plaintiff rejects the notion that any nexus is required

---

[2] The DOJ has further defined "public accommodation" as "a facility operated by a private entity, whose operations affect commerce and fall within at least one of [42 U.S.C. § 12181(7)'s twelve categories]." *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1318 (S.D. Fla. 2017) (quoting 28 C.F.R. § 36.104). "Facility," is defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located. " 28 C.F.R. § 36.104.

3

between her Website experience and her enjoyment of the goods and services at the actual Resort. *See* Resp. at 7-14. The above statutory text and the weight of precedent go against her.[3]

In fact, Plaintiff devotes much of her Response to distinguishing and discrediting the line of district court decisions that recognize a website-based claim under Title III when there is a sufficient nexus. *See* Resp. at 6-14 & n.4 (discussing cases such as *Gomez*, 2017 WL 1957182). Mystic Dunes relegated these cases to a footnote in its Motion because Plaintiff's allegations clearly do not meet the nexus burden set forth in them. *See* Mot. at 14 n.6. Plaintiff's response that no nexus is required is surprising considering she undermines the only written decisions in Florida that have applied the ADA to websites.[4]

Plaintiff is also wrong to suggest that the underlying Eleventh Circuit decision recognizing the nexus requirement, *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002), "addressed an entirely different subsection of the ADA." *See* Resp. at 11-12. To the contrary, *Rendon* specifically addressed the same statutory provision under which Plaintiff currently brings suit, Section 12182(b)(2)(A)(ii), and explained that it prohibits "intangible barriers" to the goods, services and privileges at a place of public accommodation:

> A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, *see* 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible

---

[3] Plaintiff reads too much into the recent Eleventh Circuit decision in *Haynes v. Hooters of America, LLC*, 893 F.3d 781 (11th Cir. 2018). *See* Resp. at 6-7 (arguing that *Hooters* implicitly held that the ADA covers websites). Although the case involved a website-related claim, it did not address the question of whether the ADA applies to websites in general, either because websites are themselves places of public accommodation or because they have a sufficient nexus to physical places of public accommodation. The holding of *Hooters*, as with any case, is comprised of the result of the case and "those portions of the opinion necessary to that result." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66-67 (1996). *Hooters* dealt solely with mootness and nothing else. None of Plaintiff's arguments are advanced by *Hooters*, as mootness is not a basis for dismissal here.

[4] Plaintiff contends, without support, that the defendants in those cases "had argued that the ADA did not apply because the DOJ had not yet promulgated regulations." Resp. at 7. This is an incorrect and narrow reading.

>barriers, such as eligibility requirements and screening rules *or discriminatory policies and procedures* that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges, *see **42 U.S.C. § 12182(b)(2)(A)**(i)-**(ii)***.

294 F.3d at 1283-84 (emphasis added); *see also* 42 U.S.C. § 12181(7) (the "entity" is the physical place of a public accommodation). Thus, a violation of 42 U.S.C. § 12182(b)(2)(A)(ii) – i.e., "discriminatory policies and procedures" – is a form of discrimination precisely because it presents an "intangible barrier" to a disabled person's ability to enjoy the goods, services and privileges at a physical place of public accommodation. *Id*. (Notably, *Rendon* dealt with an intangible barrier to "the *privilege* of competing in a contest held *in a concrete space*."). Accordingly, *Rendon's* interpretation of Section 12182(b)(2)(A)(ii) applies to this lawsuit and requires a sufficient nexus to the goods, services and privileges available at a physical place of public accommodation.[5] Because Plaintiff has not alleged a sufficient nexus between the Website and how it impacted her enjoyment of the Mystic Dunes Resort, she has not stated a cognizable injury under the ADA itself, as interpreted by courts, and therefore lacks standing.

By discarding the nexus requirement, Plaintiff also rejects the much larger body of case law that sets forth a four-factor test to determine whether a plaintiff has established the likelihood of a future injury under Title III. *See* Resp. at 7-8; Mot. at 8. Plaintiff argues that

---

[5] Plaintiff is also mistaken to suggest that *Rendon* "did not involve a claim under Subsection 12182(a)." Resp. at 11. A violation of the more specific "eligibility criteria" provision of Section 12182(b)(2)(A)(i) establishes discrimination under the general discrimination provision of Subsection 12182(a), because the specific provision "precisely defines the term 'discrimination'" used in the general provision. *Rendon*, 294 F.3d at 1282; *see also* 42 U.S.C. § 12182(b)(2)(A) ("For purposes of subsection (a) of this section, discrimination includes— . . . ."). Thus, *Rendon* involved a claim under Subsection 12182(a). Further, Plaintiff's strained argument that only Subsection 12182(b)(2)(A)(i) requires a nexus to a physical place, but not Subsection 12182(b)(2)(A)(ii), misinterprets *Rendon* and its progeny. *See* Resp. at 12-14. *Rendon* did not introduce a nexus requirement based on Plaintiff's suggested textual analysis of the two halves of Subsection 12182(b)(2)(A)(i) and its preposition "from," *see* Resp. at 12; rather, *Rendon* recognized a nexus requirement for all "intangible barriers" based on the ADA's "plain and unambiguous statutory language" that intangible barriers can also "restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges" at its place of public accommodation. *See Rendon*, 294 F.3d at 1283-84 & n.8 (cases from the Third, Sixth, and Ninth Circuits "can be read to require a nexus between the challenged service and the premises of the public accommodation. That nexus is surely present here."). Alternatively, if the Court accepts Plaintiff's textual analysis of Subsection 12182(b)(2)(A)(i), a similar "nexus" would result from Subsection 12182(b)(2)(A)(ii)'s use of the word "when."

because "website cases do not involve physical locations," the proximity of her residence and the proximity of her past and future plans to the Mystic Dunes Resort are irrelevant. *See* Resp. at 7-8 (citing *Gniewkowski v. Lettuce Entertain You Enter., Inc.*, 251 F.Supp.3d 908, 913-14, 919-20 & n.1 (W.D. Pa. 2017) (simultaneously rejecting the nexus requirement and refusing to apply the four-factor standing test)).[6] In Plaintiff's understanding, the only location to which she ever needs proximity is cyberspace.[7]

Should this Court abandon the "nexus" requirement between a website and a plaintiff's experience at a physical location, any disabled person with an Internet connection, anywhere in the country, would have standing to assert discrimination and seek injunctive relief based on nothing more than visits to various websites from the comfort of home. This would render extinct the ADA's focus on actual places of public accommodation.

---

[6] Plaintiff recently convinced Judge Covington, in this District, to apply the traditional four-factor test to Plaintiff's interaction with the website only, which Judge Covington found "very challenging" to do, but nevertheless decided Plaintiff faced a likelihood of future injury. *See Kennedy v. Gold Sun Hospitality, LLC*, Case No. 8:18-cv-00842-VMC-CPT (M.D. Fla. June 18, 2018), Dkt. No. 20, Hrg. Tr. at 28-32, attached as **EXHIBIT A**. Judge Covington also found that the nexus requirement does not apply to the Regulation at issue, largely because there are no cases directly on point. *Id*. at 33-36. Alternatively, Judge Covington concluded that a nexus requirement would be satisfied, stating, "[t]he website allows individuals to make reservations, so the website is a gateway to the hotel, and information about accessible features is necessary for a disabled person to know if they can stay there." *Id*. at 37.

Mystic Dunes asks this Court to decide the present case differently. For the reasons argued above, the nexus requirement applies to the Regulation based on the plain language of the ADA, as interpreted by *Rendon* and other cases. In addition, the nexus requirement is only satisfied when the alleged Internet-based injury impacts the plaintiff's enjoyment of goods, services, facilities, privileges, advantages, or accommodations of the physical location, not merely when a website could assist a plaintiff in deciding to travel to the physical location. *See Gil*, 242 F.Supp.3d at 1321 (noting that "Winn–Dixie's website is heavily integrated with, and in many ways operates as a gateway to, Winn–Dixie's physical store locations" because it "denies the Plaintiff equal access to the services, privileges, and advantages of Winn–Dixie's physical stores and pharmacies."). In analogous "ticketing" cases, the nexus requirement was not satisfied where a website sold tickets to the public accommodation, because the plaintiffs could not demonstrate that the inaccessible website prevented or impeded their access to the actual, concrete space. *Access Now*, 227 F. Supp. 2d at 1321 (Southwest Airlines); *Kidwell*, 2017 WL 176897, at *5 (Busch Gardens & SeaWorld). Likewise, the inability to make an online reservation does not impede access to the physical place of lodging. Unless Plaintiff can allege that the lack of additional information on the Website actually prevented her from accessing the physical location (which she cannot do), the nexus requirement is not satisfied.

[7] Plaintiff misstates the holding in *Access 4 All, Inc. v. 539 Absecon Blvd.*, No. 05–5624(FLW), 2006 WL 1804578 (D.N.J. June 26, 2006). That case did not hold the "Proximity Test is *inapplicable* to hotels." Resp. at 8 (emphasis added). It stated that the proximity of plaintiff's residence to defendant's place of public accommodation "is less determinative in the context of hotels than in restaurants and other retail establishments." *Id*. at *3. The plaintiff, however, still had to "show definitive plans to return and frequency of travel *in the area of* defendant's place of public accommodation." *Id*. at *4 (emphasis added). Here, Plaintiff cannot meet these requirements.

### B. Plaintiff has not alleged Internet-based injury as to her particular disability.

More obviously, in the absence of a nexus to her experience at the physical property, Plaintiff cannot allege Internet-based discrimination "on the basis of [her] disability" as required by the ADA. 42 U.S.C. § 12182(a). Plaintiff is not blind or visually impaired. *See, e.g.*, *Access Now*, 227 F.Supp.2d 1312 (plaintiff alleged Internet-based discrimination due to blindness); *Hooters*, 893 F.3d 781 (same); *Gil*, 242 F. Supp. 3d 1315 (same). The Website is fully available to her. Her disability does not prevent her from experiencing the "full and equal enjoyment" of the Website in the same manner as non-disabled individuals enjoy it. The ADA does not recognize equal-experience injuries.

## II. PLAINTIFF HAS NOT STATED A PLAUSIBLE ADA VIOLATION

### A. There is no private right of action to enforce 28 C.F.R. § 36.302(e)(1)(ii).

Plaintiff mischaracterizes Mystic Dunes' argument that no private right of action exists. Contrary to Plaintiff's assertion, Mystic Dunes did not argue that there is no private right of action for all "hotel website cases" in general, *see* Resp. at 4, nor is such question before the Court. Mystic Dunes argued that the private right of action under Title III does not extend to 28 C.F.R. § 36.302(e)(1)(ii) because the Regulation goes beyond what the ADA mandates and is substantively arbitrary for not providing sufficient clarity of what it requires. *See* Mot. at 10-14.

Instead of addressing these arguments, Plaintiff suggests that a private right of action would exist to enforce any regulation promulgated by the DOJ. *See* Resp. at 4-6 (citing 42 U.S.C. § 12188). In pure tautological fashion, Plaintiff reasons that because the Regulation at issue was promulgated by the DOJ and defines actionable discrimination under Title III, the DOJ can define actionable discrimination under Title III through the Regulation it promulgated. *Id*. This circular reasoning would place no limits on the DOJ's regulatory authority under Title III. For the reasons discussed below, the DOJ is not entitled to such unlimited deference.

B. **The Department of Justice's interpretation is not entitled to deference.**

The Regulation is not a permissible interpretation of the particular statutory provision at issue here. Congress expressed no intention under Title III to regulate discrimination that a disabled person experiences exclusively at home.

The cases in this Circuit requiring a nexus between a website and discrimination at a physical place of public accommodation do so because the ADA's general prohibition of discrimination in 42 U.S.C. § 12182(a) is limited by the ADA's definition of "public accommodation" in 42 U.S.C. § 12181(7). *Access Now*, 227 F. Supp. 2d at 1317-18; *Haynes*, 2017 WL 4863085, at *3-4; *Gomez*, 2017 WL 1957182, at *2. Those same statutory provisions (and corresponding limitations) control here, as well.

Where "Congress has provided such a comprehensive definition of 'public accommodation,' . . . the intent of Congress is clear enough," so the DOJ's interpretation of what constitutes a "public accommodation" does not warrant deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Stevens v. Premier Cruises, Inc.*, 215 F. 3d 1237, 1240-41 & n.6 (11th Cir. 2000). Accordingly, based on the plain and unambiguous language of Title III, the Court need not give weight to any regulatory expansion of Title III's "public accommodation" prohibitions to cyberspace.

Alternatively, Plaintiff contends that the Website is a *service* of a public accommodation. *See* Resp. at 12 (unequal access to a website "is tantamount to denial of full and equal enjoyment of a service"). Indeed, the DOJ's Regulation purports to regulate the "reservations service" of a place of lodging. 28 C.F.R. § 36.302(e)(1)(ii). But, the phrase "services . . . of any place of public accommodation" in 42 U.S.C. § 12182(a) is unambiguous and means a service that is available at the public accommodation. *See Rendon*, 294 F. 3d at 1284 n.8 (11th Cir. 2002) (discussing cases in the Third, Sixth, and Ninth Circuits that interpret the meaning of "services"

in Title III as those services "offered from the defendants' own offices or facilities," *e.g.*, *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir.1998) (explaining that the "goods, services, facilities, privileges, advantages, or accommodations" to which Title III ensures access should not be treated as "free-standing concepts but rather all refer to the statutory term 'public accommodation' and thus to what these places of public accommodation provide")); *Gil,* 242 F.Supp.3d at 1321 ("The website's alleged inaccessibility therefore denies the Plaintiff equal access to the services, privileges, and advantages of Winn–Dixie's physical stores and pharmacies."); *Haynes v. Pollo Operations, Inc.*, No. 17-cv-61003-GAYLES, 2018 WL 1523421, at *2 (S.D. Fla. Mar. 28, 2018) (emphasis added) ("Plaintiff does not adequately allege that his inability to fully access Defendant's website impeded his access to Defendant's physical locations or the goods and services ***offered therein.***"); *Gomez,* 2017 WL 1957182, at *4 ("All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-motar [*sic*] store."); *see also Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 388 (E.D.N.Y 2017) ("The Courts of Appeals for the Third, Sixth, Ninth, and Eleventh Circuits hold that the statute is unambiguous: 'places of public accommodation' are physical structures, and the only goods and services that a disabled person has a 'full and equal' right to enjoy are those offered at a physical location.").

To the extent the DOJ's Regulation extends Title III beyond the "services" offered at a place of lodging, such as room service or maid service, it is not entitled to *Chevron* deference. *See Ault v. Walt Disney World Co.*, 692 F. 3d 1212, 1215-16 (11th Cir. 2012) (recognizing that "the district court afforded the new DOJ regulation no deference under *Chevron*, because the court found that 'the revised regulations conflict with the plain language of Title III.'").

Despite this case law, should the Court determine that the term "services" in 42 U.S.C. § 12182 is ambiguous and therefore *might* encompass an online reservation system, the question for the Court becomes whether the DOJ's Regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44. Mystic Dunes previously explained why the Regulation is substantively arbitrary, i.e., because it does not set forth sufficient guidance on what is even required to comply. Mot. at 10-14. It is also procedurally arbitrary. After all, the DOJ expressly disclaimed any intention to regulate the accessibility of websites and even indicated that "a staffed telephone information line" could substitute for an inaccessible website. *See* Mot. at 14, 16. For the DOJ to hold a place of lodging liable for discrimination based on an inaccessible website, despite its express disclaimers, would be procedurally arbitrary and capricious if imposed through a Regulation that does not even mention online reservations. *See* 28 C.F.R. § 36.302(e)(1)(ii) (broadly referring to "reservations made by any means").

Taken literally, the Regulation applies to reservations made by third-party travel agents and booking websites who themselves may not own, lease, or operate any place of public accommodation. This is contrary to the reach of Title III's prohibitions. *See* 42 U.S.C. § 12182(a) (prohibiting discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation.").

### III.   CONCLUSION

If this Court accepts Plaintiff's argument it will be the *first* to require a place of lodging to provide a more informative website for disabled persons than it provides for non-disabled persons, with detailed information relevant to all varieties of disabilities for each hotel and guest room, even when Plaintiff has never visited and never intends to visit an actual place of lodging. The ADA does not recognize such cyber-injuries and neither should this Court.

        **Respectfully submitted,**

        */s/ Glennys Ortega Rubin*
        **PAUL J. SCHECK, ESQ.**
        Florida Bar No. 028487
        Email: pscheck@shutts.com
        **GLENNYS ORTEGA RUBIN, ESQ.**
        Florida Bar No. 00556361
        Email: grubin@shutts.com
        **RAYMOND F. TREADWELL, ESQ.**
        Florida Bar No. 93834
        Email: rtreadwell@shutts.com
        SHUTTS & BOWEN LLP
        300 South Orange Avenue, Suite 1600
        Orlando, Florida 32801
        Telephone:  (407) 423-3200
        Facsimile:  (407) 425-8316

        *Attorneys for Defendant Mystic Dunes LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this 27th day of July, 2018, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the following:

    Bridget Fields, Esq.
    Bridget.Fields11@gmail.com

        */s/ Glennys Ortega Rubin*
        GLENNYS ORTEGA RUBIN, ESQ.

ORLDOCS 16252943 4