UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


| | | |
|---|---|---|
| PATRICIA KENNEDY, | ) | Tampa, Florida |
| | ) | |
| Plaintiff, | ) | No. 8:18-cv-842-T-33CPT |
| | ) | Docket No. 21 |
| | ) | |
| vs. | ) | June 18, 2018 |
| | ) | |
| GOLD SUN HOSPITALITY, LLC, | ) | 10:00 a.m. |
| | ) | |
| Defendant. | ) | Courtroom 14B |
| _____ | ) | |


**TRANSCRIPT OF MOTION HEARING**
BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


*Official Court Reporter:*

*Scott Gamertsfelder, RMR, FCRR*
*801 North Florida Avenue*
*Tampa, Florida 33602*
*Telephone:  (813) 301-5898*

EXHIBIT "A"

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

# A P P E A R A N C E S

**PLAINTIFF COUNSEL:**

> **Thomas B. Bacon, Esq.**
> Thomas B. Bacon, P.A.
> 644 North McDonald Street
> Mt. Dora, Florida 32757
> (954) 478-7811

**DEFENSE COUNSEL:**

> **Lauren Elizabeth Wages, Esq.**
> Luks, Santaniello, Petrillo & Jones, LLC
> 100 North Tampa Street, Suite 2120
> Tampa, Florida 33602
> (813) 228-0081

- - -

1                     **P R O C E E D I N G S**

2    June 18, 2018                                    10:02 a.m.

3                            - - -

4              COURT SECURITY OFFICER:  All rise.

5              The United States District Court in and for the

6    Middle District of Florida is now in session.  The Honorable

7    Virginia M. Hernandez Covington presiding.

8              Please be seated.

9              THE COURT:  Good morning.

10             We are here for a hearing on a motion to dismiss

11   in Patricia Kennedy versus Gold Sun Hospitality, LLC.  It's

12   Case No. 8:18-cv-842-T-33CPT.

13             I'll begin by having counsel state their

14   appearances.  Who do we have for the plaintiff?

15             MR. BACON:  Your Honor, good morning.  My name is

16   Thomas Bacon for the plaintiff.

17             THE COURT:  Good morning.

18             Who do we have for the defendant?

19             MS. WAGES:  Lauren Wages on behalf of Gold Sun

20   Hospitality.

21             THE COURT:  Good morning.

22             I note this lawsuit was filed initially on April

23   9th, and then an amended complaint was filed on May 8th.  In

24   the Complaint, Kennedy alleges that Gold Sun operates a hotel

25   in Palm Harbor and maintains a website for the hotel through

1    which individuals can reserve rooms.

2           Kennedy, who is disabled and uses a wheelchair or

3    a cane, is an ADA tester.  She alleges that she visited the

4    website for the purpose of reviewing and assessing the

5    accessible features at the property and ascertain whether

6    they meet the requirements of 28 Code of Federal Regulations

7    Section 36.302(e), and her accessible needs.  However,

8    Kennedy was unable to do so because Gold Sun failed to comply

9    with the requirements set forth in the Code of Federal

10   Regulations.  Section 36.302(e) is a regulation implementing

11   the ADA that reads, in relevant part:

12          "A public accommodation that owns, leases, or

13   leases to or operates a place of lodging shall with respect

14   to reservations made by any means, including by telephone, in

15   person, or through a third party, one, modify its policies

16   and practices or procedures to ensure that individuals with

17   disabilities can make reservations for accessible guest rooms

18   during the same hours and in the same manner as individuals

19   who do not need accessible rooms;

20          "and, two, identify and describe accessible

21   features in the hotels and guest rooms offered through its

22   reservation service in enough detail to reasonably permit

23   individuals with disabilities to assess independently whether

24   a given hotel or guest room meets his or her accessible

25   needs."

1          The Amended Complaint alleges the website violated

2    this regulation because it failed to identify accessible

3    features of the hotel and its guest rooms.  For example, the

4    website does not contain any information as to whether any

5    rooms offer roll-in showers, compliant tubs, accessible tub

6    seating, accessible commodes, grab bars, sinks, door and sink

7    handles, wrapped piping.

8          Additionally, Gold Sun's website allegedly

9    indicates the hotel offers a pool, whirlpool, gym, business

10   center, and restaurant, but no information as to whether any

11   of these features are accessible.

12         According to Kennedy, in the near future she

13   intends to revisit Gold Sun's website and/or online

14   reservation system in order to test it for compliance and/or

15   to utilize the website to reserve a guest room or otherwise

16   avail herself of the facilities.

17         The Amended Complaint alleges the violations

18   present at Gold Sun's website infringe her right to travel,

19   free of discrimination, and deprive her of the information

20   required to make meaningful choices for travel.

21         Gold Sun filed its Motion to Dismiss on May 22nd

22   and Kennedy has responded and attached a declaration

23   concerning the frequency of her travel.  So the motion is now

24   ripe, and that's what we are here on today.

25         I'll just take a moment to talk about the legal

1    standard, and then I'll hear from Miss Wages, since it's your

2    motion.  On a motion to dismiss, pursuant to Rule 12(b)(6),

3    the Court accepts as true all the allegations in the

4    Complaint and construes them in the light most favorable to

5    the plaintiff.

6         Courts are not bound to accept as true a legal

7    conclusion couched as a factual allegation.  The Court must

8    limit its consideration to well-pleaded factual allegations,

9    documents central to or referenced in the Complaint, and

10   matters judicially noticed.

11        Additionally, motions to dismiss for lack of

12   subject matter jurisdiction pursuant to Rule 12(b)(1) may

13   attack jurisdiction either facially or factually.  Whereas

14   here, the jurisdictional attack is based on the face of the

15   pleadings.  The Court merely looks to determine whether the

16   plaintiff has sufficiently alleged a basis of subject matter

17   jurisdiction, and the allegations in the plaintiff's

18   Complaint are taken as true for purposes of the motion.

19        All right.  So I think, if you can, come forward

20   to the podium, please, Miss Wages.  So my review tells me

21   that Gold Sun is arguing the case should be dismissed under

22   Rule 12(b)(1) because Kennedy lacks standing, or under Rule

23   12(b)(6) because the Amended Complaint fails to state a claim

24   for violation of the ADA; correct?

25        MS. WAGES:  Correct.

1          THE COURT:  I'll hear your argument now.

2          MS. WAGES:  Thank you, Your Honor.

3          As Your Honor is aware, this case does not involve

4    a traditional claim where the plaintiff goes to a physical

5    location and encounters a physical barrier at the physical

6    location and then seeks to have redress with respect to the

7    actual physical encounter.

8          This case involves the plaintiff accessing the

9    defendant's -- allegedly accessing the defendant's website

10   and not being able to ascertain the accessibility features

11   for the hotel from the website.

12         We have alleged that the plaintiff lacks standing

13   in this matter, and it's not because the plaintiff is a

14   tester.  She is certainly allowed to be a tester, and the

15   case law is clear on that.

16         THE COURT:  Because I think almost every case I've

17   had here involves a tester.  There may be a couple that I

18   didn't know were testers, but I think virtually all of our

19   cases involve testers.

20         MS. WAGES:  Yes.  And she is certainly allowed to

21   do that and be a tester.  However, she still has to show a

22   particularized individual injury in order to have standing to

23   bring this action.

24         THE COURT:  So are you challenging only her

25   ability to establish standing to seek injunctive relief, that

1    is, with respect to her allegations that there is a

2    likelihood of future injury?

3         MS. WAGES:  Yes.  So we are challenging that, as

4    the Complaint on its face as pled, she has not alleged

5    sufficient standing to show that.  You have the three

6    elements that are needed to establish standing.  An

7    injury-in-fact that is concrete and particularized, an injury

8    that is fairly traceable to the challenged action to the

9    defendant, and must be likely that a favorable decision will

10   redress that injury.

11        But what is key here is really that fourth element

12   that comes into play when a plaintiff is seeking injunctive

13   relief, and that is that a real and immediate threat of

14   future injury has to be demonstrated.  Here, the plaintiff

15   has not shown a real and immediate threat of future injury.

16   The case law is clear that hypothetical or conjectural injury

17   is not enough.

18        THE COURT:  How about her affidavit that was

19   attached to the response, what are your thoughts on that?

20        MS. WAGES:  As Your Honor went through the

21   standard earlier, I think the case law is fairly consistent

22   in deeming this type of challenge to be a factual attack

23   versus a facial attack.

24        So I think the plaintiff's response to the Court

25   interrogatories is acceptable for the Court to look at.  The

1   affidavit is acceptable for the Court to look at; and I think

2   the affidavit attached is actually interesting because the

3   response itself says these factors don't matter.  So when you

4   get to injunctive relief and you have to show a real and

5   immediate threat of future injury, this circuit has adopted a

6   four-part test to sort of determine whether the plaintiff can

7   show that.

8          So the affidavit is interesting in that the

9   response says these factors don't matter.  The Court

10  shouldn't pay attention to them because this is not a

11  traditional access to a physical barrier case.  This is

12  access to a website, but the affidavit itself actually tries

13  to address some of those issues that we have raised as part

14  of that four-factor test to determine whether she has pled a

15  sufficient future injury.

16         THE COURT:  Okay.

17         MS. WAGES:  So the party invoking federal

18  jurisdiction has the burden of establishing these elements.

19  The plaintiff has the burden of establishing that she has

20  standing to be here, and it is our position that she has not

21  established the elements necessary to invoke this Court's

22  jurisdiction.

23         THE COURT:  I want to make certain I understood

24  you correctly.  Did you say your motion is a factual attack

25  or a facial attack?

1          MS. WAGES:  We pled it as both.

2          THE COURT:  Because I thought that your motion

3    said that the Amended Complaint does not establish standing,

4    which is a facial attack.  So I wasn't certain that I had

5    either misunderstood you or I had not analyzed correctly.

6          MS. WAGES:  I think we have sort of pled both.

7    She hasn't alleged enough on the face of the Complaint to be

8    here.  But in reviewing the cases where this issue has come

9    up, it appears to me that courts traditionally treat it as a

10   factual attack versus a facial attack.

11         THE COURT:  Do you have any factual information

12   undermining standing that you would like to call to my

13   attention?

14         MS. WAGES:  So in looking at the four factors that

15   this district has adopted in determining the likelihood of

16   future injury, the first one is the proximity of the place of

17   public accommodation to the plaintiff's residence.

18         THE COURT:  And there is a case called the

19   *Schiling* case that talks about that.  Go ahead.

20         MS. WAGES:  Again, this is a unique circumstance

21   because this is the test that's traditionally employed,

22   again, when the plaintiff is encountering an actual physical

23   barrier.  I think you can look at these factors two ways, and

24   then it kind of goes into a different argument of whether the

25   plaintiff needs to have alleged sufficient nexus to the

1   physical location.

2          But if you look at the first factor, which is the

3   proximity of the place of public accommodation to plaintiff's

4   residence, from a physical standpoint, the plaintiff alleges

5   to be a resident of Broward County.  The hotel at issue is in

6   Pinellas County.  So from an actual physical distance, we are

7   talking a 300-mile difference.

8          THE COURT:  Although, I have to tell you, I've

9   seen those arguments before, and I've seen them survive.  A

10  number of these testers are not necessarily from the Tampa

11  area.  They are from the East Coast part of the state.

12         MS. WAGES:  I would agree, Your Honor, and I

13  think, most importantly, one factor is not dispositive of the

14  issue.  The Court should take all the -- totality of all

15  relevant factors into play rather than just resting on one

16  particular factor.  But we still -- I think that's not a

17  factor that goes in plaintiff's favor.  She resides in a

18  physical location that is significantly further away.

19         Past patronage to the defendant's business.  There

20  is no allegations in the Amended Complaint that the plaintiff

21  has ever actually visited this hotel, had plans to do so, has

22  any definitive plans to do so, even when she was going to go

23  online to see if it met her accessible needs.  There is no

24  allegation that she had been there in the past and wanted to

25  return or been to the area in the past and wanted to return.

1          There is no allegation she had ever been to the

2     website prior to that date either.  So we are arguing that

3     these four factors do, in fact, apply; but to the extent --

4     and they should apply to the physical location of this hotel;

5     but to the extent the Court thinks they should just apply to

6     the website, there is also no allegation other than this one

7     time she visited the website.

8          THE COURT:  Do you think that because this case

9     involves the website the traditional test for analyzing the

10    likelihood of future injury this ADA case doesn't work or

11    shouldn't be applied?  Or how should the Court apply that

12    test, or should the Court apply a different test because it's

13    a website?

14         MS. WAGES:  This is a novel issue; and even in

15    writing the Motion to Dismiss, trying to analyze these

16    factors to a website, I think some of them could apply.  I

17    think we even stated, and the plaintiff pointed out, the

18    fourth factor, the plaintiff's frequency of travel near the

19    defendant.  There is no way to apply that to a website that I

20    can really see.

21         But I think that the most important factor is the

22    third factor, which is the definitiveness of the plaintiff's

23    plan to return.  And I think without any -- there is, I

24    think, no case law on this issue.  And my colleagues, we have

25    searched.  This is a new issue.  So we are dealing with a new

1   area of law where we don't have much guidance from anything

2   other than DOJ publications and things like that.

3          But I think these factors are still relevant, and

4   I think that the definitiveness of plaintiff's plan to return

5   is probably the most key factor that this Court should apply,

6   because the plaintiff cannot show a future injury if she has

7   no plan to return to this hotel.

8          THE COURT:  How about her allegation she intends

9   to revisit the website in the near future?

10          MS. WAGES:  I think that argument fails.  I think

11   the case law is consistent that saying "in the near future"

12   is not enough.  There needs to be a more concrete,

13   particularized definitive plan for the Plaintiff to return.

14          I argue that there should be a nexus to the

15   physical location, so the plaintiff should have a

16   particularized concrete plan to go to the physical location;

17   but even if the Court says there is no nexus, she still needs

18   a concrete definitive plan to return to the website, and

19   that's lacking here.

20          THE COURT:  Okay.  Anything else you would like to

21   say?  You can move on to failure to state a claim unless

22   there is anything else you would like to say with respect to

23   standing.

24          By the way, have you updated your website to

25   include the information about the accessible features of your

1  rooms?

2          MS. WAGES:  We are in the process of discussing

3  that; but if you look at the little guidance that's

4  throughout, there is no -- there is not really anything

5  that's set or any court ruling that says what's sufficient

6  detail to describe the accessibility features.

7          There is a DOJ publication out there that

8  suggested what could be there, and we cite to that.  In the

9  *Barnes* case, there is a couple of suggestions of what

10 possibly is compliant, and that's a California case; but the

11 Court didn't find anything wrong with what was actually

12 listed on the website, but it's certainly something we are

13 discussing.

14          THE COURT:  Okay.

15          MS. WAGES:  I think the other point I would like

16 to just touch on briefly is the nexus to the brick-and-mortar

17 hotel.  I think that in order to state a real and immediate

18 threat of future injury, the Complaint on its face

19 necessarily implicates a brick-and-mortar hotel.  You don't

20 go to a hotel website reservation system for any other reason

21 but to book a reservation at a brick-and-mortar hotel.

22          And the general statute requires that the

23 discrimination occurred at a place of public accommodation,

24 and we have cited two cases out of the Middle District which

25 hold a website is not a place of public accommodation.

1                We cited to a Southern District case that said it

2      could be, if you allege that nexus to the physical location.

3      If I recall, I think that case, they were either ordering

4      groceries or prescriptions, or something online that would

5      require them to actually go to the physical location and

6      interact with the physical location in some manner.

7                THE COURT:  The Eleventh Circuit has not

8      explicitly held that a website is not a public accommodation.

9                MS. WAGES:  No, but the Middle District has

10     addressed that issue and found that it was not.

11               So I think that in this circumstance, the

12     plaintiff has not alleged an actual public accommodation.

13     You can't really have it both ways.  I think that either

14     there needs to be this nexus to the physical location so that

15     you sufficiently plead a place of public accommodation, or we

16     don't have a public accommodation at issue at all here

17     because we are just talking about a website.

18               THE COURT:  Okay.

19               MS. WAGES:  If Your Honor has any further

20     questions, I'm happy to address them.

21               THE COURT:  No, I think you've answered.  Let me

22     see.  How do you reconcile the case law regarding the nexus

23     requirement with the regulation, that's 28 CFR Section

24     36.302(e), which supports that failure to provide information

25     about accessible features on a website or through another

1    reservation system is discrimination?

2           MS. WAGES:  I think that the purpose and the

3    spirit of the ADA is to make sure that there is equal access

4    to places of public accommodation for everybody.  But the

5    plaintiff still has to show standing.  She still has to show

6    that she has a threat of future injury that is immediate.

7           So, again, the purpose of the regulation is to

8    ensure equal access to all parties.  To the extent my client

9    failed to do that, there should be some redressability; but

10   the plaintiff still has to show she has standing, and she has

11   not done so here.

12          THE COURT:  Would that be your response with

13   respect to the nexus between the website and the hotel?

14   Because my question is, can't patrons make reservations for

15   the hotel through the website?  And because the website

16   describes the location and features of the hotel to induce

17   individuals to stay there, why isn't that a sufficient nexus?

18          MS. WAGES:  Maybe it could be if the plaintiff had

19   alleged more to tie her to the physical location.  Maybe if

20   the plaintiff said, I was planning a trip for July 4th, 2018,

21   and I know I want to stay in Palm Harbor.  So when I went

22   online, I checked X, Y, and Z hotels because I know I want to

23   stay in this location because I have a definitive plan to

24   travel there; and when I went to X, Y, and Z reservation

25   systems, I found one that didn't tell me anything to

1    determine my accessibility features and I found another one

2    that told me everything I needed to know, so I booked with

3    that hotel because just based on their reservation system, I

4    was able to ascertain whether that hotel would meet my

5    accessibilities.  Maybe something like that would be

6    sufficient, but I think you still have to have the tie, the

7    nexus to the physical location more than what's been alleged

8    here.

9                 THE COURT:  All right.  I appreciate it.  Thank

10   you very much.

11                MS. WAGES:  Thank you, Your Honor.

12                THE COURT:  Mr. Bacon, I'll hear your response

13   now.

14                MR. BACON:  Hello, Your Honor.

15                I think this is a case of first impression; and if

16   you look at the defendant's brief, they rely on cases

17   involving -- they cite to cases involving a plaintiff's

18   physical visit to an actual place of public accommodation,

19   such as a plaza, for example.

20                If the plaintiff was in Broward County and visited

21   a plaza and sued under the ADA for architectural barriers she

22   encountered, courts apply the proximity test.  How far does

23   the plaintiff live from the premises?  What's their frequency

24   of travel to the premises?  And that's something I've been

25   arguing against the propriety of for years now.  We are

1    arguing here that since this is a website case, those are not

2    appropriate, but I'll put that last.

3              THE COURT:  So you think the traditional test

4    shouldn't be utilized?  The Court should use a different test?

5              MR. BACON:  Well, to jump to the end of my

6    argument first, the question, when a court applies any test

7    at all, proximity test or otherwise, what is the likelihood

8    that the plaintiff is going to encounter an injury again in

9    the future or whether the injury is actual or ongoing or

10   imminent.

11             That is one of the requirements for injunctive

12   relief, and that's when courts look to what's the likelihood

13   of the plaintiff returning to the property in the future to

14   encounter that violation.  While I've argued that they are

15   deprived of the equality of opportunity and they are being

16   segregated, none of that's relevant here to a website case

17   because this isn't a question of whether or not the plaintiff

18   is going to travel 300 miles to encounter the discrimination

19   again.

20             The question is, where is the site of the injury?

21   Where does the plaintiff encounter the discrimination?  Well,

22   in website cases, a disabled person encounters the

23   discrimination when they are looking at the website in their

24   own home.

25             THE COURT:  That would be true, obviously, for

1  somebody who is, let's just say, visually impaired.  Let's

2  take an example of color blind,and let's say that the website

3  uses colors.  To somebody who is color blind and can't

4  distinguish, I can understand that argument being made, but

5  tell me why that argument is applicable here in this case.

6          MR. BACON:  The bulk of the litigation and case

7  law on websites involves not hotel online reservation

8  systems.  It involves whether or not a commercial website

9  discriminates against blind people.  In other words, whether

10  a website is compatible with screen reader software so a

11  blind person, sitting in their own home, can go through.  It

12  gives them a vocal indication as to what their cursor is on

13  and what's going on.

14          There's been a spate of litigation about that.

15  Defendants started their argument from the notion that the

16  ADA does not apply to websites at all.  And the reason for

17  that is that the Department of Justice has not promulgated

18  any regulation on making websites compatible for screen

19  reader software.

20          By contrast, the Department of Justice has

21  implemented a regulation pertaining to hotel online

22  reservation services.  There is a regulation directly on

23  point.

24          But more to the point of whether or not there

25  needs to be a physical nexus between the discrimination the

1   plaintiff encounters when they look at a website to a

2   brick-and-mortar facility, there is case law on that.  There

3   are several cases in the Southern District of Florida, some

4   of which the defendant cited, but they are all the same.  I

5   believe they are all issued from the same judge, and the

6   opinion on that matter is virtually identical from one to the

7   next.

8           What Judge Dimitrouleas did in the Southern

9   District of Florida is he looked to the closest Eleventh

10  Circuit opinion that there was.  And that was *Rendon versus*

11  *Valley Crest*.  I have the cite here.  It's in my brief.

12          That case involved contestants who wanted to get

13  on the game show "Who Wants to be a Millionaire?" and they

14  had to go through a telephone screening process where they

15  call in and that screens out who is going to become a

16  contestant and who is not.

17          The Eleventh Circuit looked at that and held that,

18  well, yes, you do have to have -- if the discrimination

19  prevents them from access to the brick-and-mortar facility,

20  then you have a cause of action.

21          However, this is where the rules of statutory

22  construction come into play.  In *Rendon*, they looked at a

23  particular subsection of the ADA.  There are several

24  subsections.  Each one has their own set of causes of action.

25          The one looked at by *Rendon* was 42 USC

1    12.182(b)(2)(A)(1)(i).  That says the discrimination is

2    defined as the imposition or application of eligibility

3    criteria -- that is the telephone screening process -- that

4    screened out or tend to screen out an individual with a

5    disability or any class of individuals with disabilities from

6    fully and equally enjoying any goods, services, facilities,

7    et cetera.

8              Under the rules of statutory construction,

9    announced by the Supreme Court a few years ago, where

10   Congress includes particular language in one section of a

11   statute, but omits it in another section of the same act, it

12   is generally presumed that Congress acts intentionally and

13   purposely in the disparate inclusion or exclusion.

14             This physical nexus between the discriminatory

15   telephone screening criteria and preventing them from fully

16   accessing goods, service, et cetera, that nexus is actual in

17   the statute section that *Rendon* applied.

18             It is not in these other sections.  It is not in

19   Section 12.182(a), which is the general rule.  That says that

20   no individual shall be discriminated against on the basis of

21   disability in the full and equal enjoyment of the goods,

22   service, facilities, privileges, advantages, et cetera.

23             A website is a service.  It is a service of a

24   place of public accommodation.  A hotel's online reservation

25   system is a service that it provides to the general public

1   to, sitting in their own homes, look at the website.

2         Under this subsection right here, all that is

3   required is that they be deprived of full and equal enjoyment

4   of a service.

5         These cases that are cited, like *Bang & Olufsen*,

6   that was not up on appeal, but there were several other cases

7   that I have personally appealed and have not gone to oral

8   argument yet, or if they ever will.  There's been no ruling.

9         But the argument I make with respect to general

10  website cases involving vision impaired is that you have to

11  apply the rules of statutory construction and hold that there

12  is no nexus required between encountering a discriminatory

13  website and actually accessing the physical facility.

14        THE COURT:  Okay.  Let me ask you about the

15  standing here.  If Gold Sun has updated or had updated its

16  website with information on its accessible features, would

17  your client lack standing?

18        MR. BACON:  There is a difference between standing

19  and mootness.  That would be a mootness question.  Whether or

20  not a website can be mooted simply by making changes to it,

21  that's probably the next motion that will be filed in this

22  case, you know, weeks or months down the road.

23        Cases that hold -- on the mootness issue, you have

24  to have the general rule, which is *Shealey versus MRI*, that

25  involved the policy where a vision-impaired person -- I'm

1  sorry, a person wanted to go into sort of a medical-type

2  facility with their service dog, and they argued for a period

3  of time.  During the course of the litigation, the defendant

4  modified its policy and said, okay, the case is moot.

5        The Eleventh Circuit said, no, you cannot do that.

6  Where you have a behavior that was changed in response to the

7  lawsuit, there is no genuine change of heart.  The defendant

8  hadn't admitted liability, and then there is the issue

9  whether or not it's ongoing and continuous as opposed to

10  being an isolated situation.

11        Courts in Florida have carved out an exception to

12  *Shealey,* saying, well, *Shealey* doesn't really apply in an

13  architectural barriers case, because if you are talking about

14  something has been fixed and is made of concrete or is bolted

15  to a wall, then it's not likely that behavior can recur.

16        The defendant can meet its formidable burden that

17  the challenged conduct cannot reasonably be anticipated to

18  recur, to paraphrase from the requirement.

19        Whereas, a website is something that is fluid.  It

20  is constantly updated.  It changes due to marketing

21  conditions and pricing.  That is something that is -- it's an

22  ongoing and continuous thing.  It is more of a -- well,

23  architectural barrier cases, that was a different subsection

24  under Architectural Barriers.  *Shealey* was the same

25  subsection that applies to hotel websites, which is failure

1    to make reasonable modifications in policies, practices, and

2    procedures when they are necessary to afford goods, services,

3    facilities, privileges, et cetera, to individuals with

4    disabilities.

5           We would say whether or not a website can be

6    mooted is the next argument down the road, but that falls

7    squarely under *Shealey*.  It doesn't fall under the permanent

8    type of modification that courts have looked at when they

9    ruled that an architectural barriers case could be mooted.

10          THE COURT:  With respect to failure to state a

11   claim, if Kennedy could have obtained this information in

12   another fashion, such as calling the hotel or e-mailing them

13   because, in essence, what you are saying is that the hotel is

14   inaccessible because the website doesn't have all of the

15   hotel's accessible features in detail, doesn't that diminish

16   your argument since there are other ways she could obtain

17   this information?

18          MR. BACON:  Or she could have gone to the hotel to

19   look for herself, but the regulation sets out the

20   discrimination in 302 -- I'm sorry, 28 CFR 36302(e)(1) and

21   then subparagraph (i).

22          THE COURT:  So what does that statute or that

23   regulation require hotels like Gold Sun to do?

24          MR. BACON:  If they have an online reservation

25   system, it has to be so people and individuals -- people with

1   disabilities can access it in the same manner as the same

2   people who do not have disabilities.

3         The next paragraph says that if they do, they have

4   to provide the required information, so that a person with --

5   individual with disabilities can, first of all, identify the

6   rooms that are designated accessible; and, No. 2, have enough

7   information so that they can independently assess whether or

8   not the features in the rooms and the pool and other features

9   of the hotel, the common areas, the parking, all that, are

10   accessible to them.

11         THE COURT:  I don't have any other questions,

12   Mr. Bacon.  Thank you very much.

13         MR. BACON:  Thank you.

14         I'll give you an opportunity to make a quick

15   rebuttal argument, if you would like, Miss Wages.  You don't

16   have to, but I do give you that option.

17         MS. WAGES:  Thank you.

18         THE COURT:  You are welcome.

19         MS. WAGES:  I just want to point out one sort of

20   brief thing with respect to the *Rendon* case that was

21   discussed.  Yes, it was dealing with a particular subsection

22   that counsel referenced, but I think sort of the key thing

23   there is that it still has to be a place of public

24   accommodation, regardless of which subsection we are talking

25   about.  The general rule that even was cited to in

1  plaintiff's response is that it still has to be a place of

2  public accommodation; and I like the footnote ten in that

3  case where they say, "This phone quiz is, therefore, a means

4  of access to the public accommodation, not an end itself."

5  So I think that case supports our position that there does

6  need to be a nexus to the physical location.

7          Thank you, Your Honor.

8          THE COURT:  Thank you very much.

9          Well, I'm going to go ahead and rule, then.

10          I'm going to deny the defendant's motion, and I

11  will explain my ruling at this time.

12          Gold Sun has argued the case should be dismissed

13  under Rule 12(b)(1) because Kennedy lacks standing, or under

14  Rule 12(b)(6) because the Amended Complaint fails to state a

15  claim for violation of the ADA.

16          Let's begin with standing.

17          A plaintiff's standing to bring and maintain her

18  lawsuit is a fundamental component of a federal court's

19  subject matter jurisdiction.

20          The doctrine of standing limits the category of

21  litigants empowered to maintain a lawsuit in federal court to

22  seek redress for a legal wrong.  To establish standing, the

23  plaintiffs must have, one, suffered an injury-in-fact; two,

24  that is fairly traceable to the challenged conduct of the

25  defendant; and, three, that it is likely to be redressed by a

1    favorable judicial decision.

2            An injury-in-fact is an invasion of a legally

3    protected interest that is concrete and particularized and

4    actual or imminent and not conjectural or hypothetical.

5            Additionally, since Kennedy is seeking prospective

6    injunctive relief under the ADA, she must demonstrate a

7    sufficient likelihood that she will be affected by the

8    allegedly unlawful conduct in the future.

9            This requires a showing of a real and immediate as

10   opposed to a merely conjectural or hypothetical threat of

11   future injury.  However, the Eleventh Circuit has held that a

12   plaintiff's status as an ADA tester does not deprive her of

13   standing.

14           In quoting from the *Houston versus Marod*

15   supermarkets case, that's Eleventh Circuit 2013, *Houston*'s

16   status as a tester does not deprive him of standing to

17   maintain his civil action for injunctive relief.

18           The party invoking federal jurisdiction bears the

19   burden of establishing standing.  At the pleading stage,

20   general factual allegations of injury resulting from the

21   defendant's conduct may suffice, for on a motion to dismiss,

22   we presume that the general allegations embrace those

23   specific facts that are necessary to support the claim.

24           Gold Sun facially attacks Kennedy's standing to

25   bring her claim.  At least that's what my reading of the

1   motion shows.  Gold Sun does not argue that there is no

2   injury-in-fact.  Instead, Gold Sun focuses on Kennedy's

3   allegations that a threat of future injury exists.  According

4   to Gold Sun, Kennedy's threat of future injury is merely

5   conjectural or hypothetical, rather than real and immediate.

6         So I'm going to focus on the Amended Complaint and

7   not focus on her declaration since to me, at least in my

8   review of it, it appeared to be a facial attack.

9         In cases involving physical barriers, courts have

10  analyzed a nonexclusive list of factors to determine whether

11  there is a likelihood of future injury.  And we talked about

12  that during the argument.  It's the proximity of the place of

13  public accommodation to the plaintiff's residence, past

14  patronage of defendant's business, the definitiveness of

15  plaintiff's plan to return, and the plaintiff's frequency of

16  travel near the defendant.

17        Gold Sun discusses the four factors for analyzing

18  the likelihood of future injury.  It argues that Kennedy's

19  distance from the hotel -- whether it was 300 miles, 400

20  miles.  I think it was 300 -- her lack of previous visits to

21  the hotel, the lack of a plan by Kennedy to use the website

22  to reserve a room at the hotel weigh against finding the

23  likelihood of future injury, and Gold Sun also emphasizes

24  that Kennedy only visited the website once before initiating

25  this action.

1          Kennedy responds, however, that she has

2   sufficiently alleged the likelihood of future injury because

3   she has pled an intent to return to the website in the near

4   future and that she is not required to set forth a set date

5   or time of return.

6          She points to two cases involving physical

7   barriers where standing was found to exist after the

8   plaintiff alleged an intent to return in the future.  That is

9   a *Houston* case I talked about and also *Stevens versus Premier*

10  *Cruises*, an Eleventh Circuit case, 2000.

11         Here, Kennedy has alleged she was checking the

12  hotel's website mostly as a tester, but also as a potential

13  visitor of the area.  She was unable to determine whether she

14  would be able to stay at Gold Sun's hotel because the website

15  does not list the hotel's accessible features.

16         Kennedy elaborates on the information missing from

17  the website that she needed to know to independently evaluate

18  whether the hotel was accessible to her.  In other words,

19  whether the rooms had roll-in showers.

20         Under the regulation 28 Code of Federal

21  Regulations Section 36.302(e), the website and/or online

22  reservation system was required to provide information about

23  accessibility, and that's the *Schoetz* case out of the

24  Eleventh Circuit, 2001.

25         Because Congress explicitly authorized the

1   Attorney General to promulgate regulations under the ADA, the

2   regulations must be given legislative and, hence, controlling

3   weight unless they are arbitrary, capricious, or plainly

4   contrary to the statute.

5          Thus, the alleged lack of information in violation

6   of the regulation is a plausible injury-in-fact that would

7   likely be redressed by this lawsuit.

8          Critically, Kennedy's status as a tester does not

9   deprive her of standing.  That's the *Houston* case which I

10  talked about.  Also, the Kennedy case and Floridian Hotel,

11  out of the Southern District of Florida, stating, "In ADA

12  cases also involving a hotel's website, alleged violation of

13  28 CFR Section 36.302(e), plaintiff's ADA tester motive does

14  not negate her injury-in-fact, and she need not allege that

15  she intended to book a room to adequately plead an

16  injury-in-fact."

17         Plaintiff alleges that she, as a disabled woman,

18  was unable to determine the property's accessible features,

19  in violation of the ADA, but requiring plaintiff to plead

20  what information was missing from the website.

21         So regarding the threat of future injury, Kennedy

22  alleges she intends to revisit the website in the near future

23  to test its compliance.  As the website is not a physical

24  location and can be easily accessible from her home, the

25  traditional test for the threat of future injury is not

1   easily applied.  Indeed, it was very challenging.

2          However, I find that the Amended Complaint

3   sufficiently alleges that Kennedy will likely return to the

4   website again.  Importantly, Kennedy can visit the website

5   from the comfort of her home and at no cost.  Furthermore,

6   Kennedy's status as a tester plausibly increases the

7   likelihood she will visit the website again to test its

8   compliance.  Thus, as long as the website remains

9   noncompliant with the regulation, Kennedy faces a likelihood

10  of future injury.

11         So I'm finding that there is standing, at least as

12  to the pleading stage.  It doesn't necessarily mean at

13  summary judgment or further along in the proceedings, but at

14  the pleading stage, there is standing.

15         Gold Sun has not focused on the injury-in-fact,

16  but has focused on the likelihood of future injury; and the

17  alleged lack of information about accessible features which

18  plausibly violates 28, Code of Federal Regulations Section

19  36.302(e), is a sufficient injury-in-fact.

20         Regarding the threat of future injury, Kennedy's

21  allegations that she intends to revisit the website in the

22  near future to test its compliance is sufficient to establish

23  standing at this juncture.

24         The traditional four-factor test for future

25  injury, which was designed for cases involving physical

1  barriers, is simply very challenging to be applied here,

2  which involves the violation of a regulation that regulates

3  online reservation system.

4        Taking as true Kennedy's statement that she

5  intends to revisit the website and considering the ease with

6  which she can do so, Kennedy faces a likelihood of future

7  injury as long as the website remains noncompliant with the

8  regulation.

9        I'll tell you, in all candor, there weren't a

10  whole lot of cases here concerning visiting a website without

11  visiting the actual public accommodation.  I didn't see a

12  whole lot right on point here; and, again, here the test --

13  we are at the pleading stage, and it's more lenient than at

14  later stages of the proceedings.

15        So at this juncture, it is appropriate to find

16  that the plaintiff has established standing -- or to deny the

17  Motion to Dismiss based on lack of standing.

18        Moving on to failure to state a claim.  Even if

19  Kennedy has standing, Gold Sun argues the Amended Complaint

20  has failed to state a claim for violation of the ADA.  To

21  state a claim for discrimination under Title III of the ADA,

22  a plaintiff must show, one, she is disabled within the

23  meaning of the ADA; two, the defendant owns, leases, or

24  operates a place of public accommodation; and, three, the

25  defendant discriminated against the plaintiff within the

1    meaning of the ADA.

2          Discrimination under Title III includes failing to

3    take steps to ensure that no individual with a disability is

4    excluded by the absence of auxiliary aids and services.

5          According to Gold Sun, Kennedy must allege a nexus

6    between the website and the physical location of the hotel,

7    the public accommodation at issue, in order to state a claim

8    for discrimination.  Gold Sun has put forth its position that

9    the Amended Complaint fails to allege any nexus, let alone a

10   sufficient nexus between the website at issue and the

11   physical location of the hotel.

12         The Eleventh Circuit has not explicitly held that

13   a website is not a public accommodation.  We discussed that

14   during the oral argument.  However, district courts within

15   the Eleventh Circuit that have considered the question of

16   whether websites are public accommodations have uniformly

17   held that the ADA does not apply to a website that is wholly

18   unconnected to a physical location.

19         However, district courts in the Eleventh Circuit

20   have found that websites are subject to the ADA if a

21   plaintiff can establish a nexus between the website and the

22   physical premises of a public accommodation.

23         Gold Sun cites various cases holding that a nexus

24   must exist.  That's the *Gomez* case and *Haynes* case.  In

25   support of its contention that Kennedy has not alleged a

1    sufficient nexus, Gold Sun stresses that Kennedy does not

2    even allege that she previously visited defendant's hotel or

3    that she has any intention of ever visiting defendant's hotel.

4           Kennedy maintains that there is no nexus

5    requirement between website or online booking discrimination

6    and access to a physical brick-and-mortar location.

7           She stresses that the regulation at issue, 28 Code

8    of Federal Regulations Section 36.302(e), as well as 42

9    U.S.C. Section 12.182(a) and (b)(2)(A)(ii), do not have any

10   requirement that discrimination of a website or online

11   reservation system in any manner prevented a disabled person

12   from enjoying full and equal access at a physical

13   brick-and-mortar location.

14          According to Kennedy, failure of Gold Sun's online

15   reservation system to comply with the regulation is by itself

16   discrimination as defined by the regulation because Gold Sun

17   has failed to provide full and equal access to its online

18   reservation system.

19          Importantly, none of the cases Gold Sun cites

20   regarding a nexus requirement addressed the 28 CFR Section

21   36.302(e).  That regulation contemplates requiring public

22   accommodations to provide information about accessible

23   features of the website through which reservations are made.

24          Because Congress explicitly authorized the

25   Attorney General to promulgate regulations under the ADA, the

1    regulations must be given legislative and, hence, controlling

2    weight unless they are arbitrary, capricious, or plainly

3    contrary to the statute.

4           The cases cited by Gold Sun are distinguishable

5    for another reason.  The majority of these cases involve a

6    website's inaccessibility to a visually-impaired plaintiff

7    because the website was not compatible with the plaintiff's

8    screen reader.  That's the *Buckholz* case and the *Haynes* case

9    as well.  Thus, the plaintiffs in those cases alleged they

10   were unable to read any information on the website, not that

11   the defendants had failed to include on the website

12   information required by a regulation.

13          So I'm going to deny Gold Sun's Motion to Dismiss

14   on this basis as well.  Gold Sun has not provided an in-depth

15   interpretation of the regulation at issue, 28 CFR Section

16   36.302(e), or how it interplays with the supposed nexus

17   requirement.  Therefore, Gold Sun has not convinced the Court

18   the nexus requirement applies to the facts of this case in

19   which the alleged discrimination involves the violation of a

20   regulation encompassing online reservation systems, nor has

21   Gold Sun persuaded the Court that its alleged conduct was not

22   a violation of the regulation.

23          Kennedy's claim can be considered as a failure to

24   accommodate claim and the regulations outline a required

25   accommodation, inclusion of information of the hotel's

1  accessible features on the website, or online reservation

2  system.  Because Kennedy has alleged that Gold Sun violated

3  the regulation by not providing that information, she has

4  sufficiently alleged a failure to accommodate that qualifies

5  as discrimination at this juncture.

6           Alternatively, even if the nexus requirement

7  applied, it would be satisfied here.  The website allows

8  individuals to make reservations, so the website is a gateway

9  to the hotel, and information about accessible features is

10  necessary for a disabled person to know if they can stay

11  there.

12           Making all reasonable inferences in Kennedy's

13  favor, as I'm required to do at this stage, there is

14  sufficient nexus between the website and the hotel itself at

15  the pleading stage.  So because of the nexus on both of those

16  theories, the Motion to Dismiss is denied.

17           Okay.  So that's where we are at.

18           Let's see, in terms of this case, just so that I

19  know what's going on, it's been set for mediation in front of

20  Mr. Grilli on August the 13th; is that right?  That's what I

21  have here.  Is that not correct?

22           MS. WAGES:  I believe that's correct, Your Honor.

23           MR. BACON:  I believe so, Your Honor.

24           THE COURT:  And, of course, sometimes you will --

25  and I'm not trying to telegraph anything here.  I'm just

1  saying the way oftentimes these things work is that a motion

2  to dismiss is denied at the motion to dismiss stage.  As more

3  facts are developed, at the motion for summary judgment

4  stage, sometimes -- not always -- sometimes it calls for a

5  different result.

6         Now, here, this case has been fast tracked, so

7  normally a motion for summary judgment would be filed after

8  mediation.  That is normally what I envision.  I envision

9  this case, if it can be resolved expeditiously, without a

10  whole lot of expense to either side, early in the

11  proceedings, it's fine.  But, if not, normally a motion for

12  summary judgment is reserved for after discovery has been

13  opened up.  Opened up completely as opposed to the limited

14  discovery that we have here.  But because it's fast track, I

15  most certainly envision this case being tried -- normally I

16  try to do it -- let's see, in this case, before the end of

17  the year, depending on -- before the end of the year and

18  certainly by January at the very latest.

19         But, regardless, within a year of when it's filed,

20  but ordinarily I strive to do it four months or so after

21  mediation.  Recognizing there are complicated issues, I may

22  extend it, but you would need to explain to me why it's

23  necessary to extend it.  That's where we are at.

24         Any questions, Mr. Bacon?

25         MR. BACON:  Yes, Your Honor.  Will the Court be

1    issuing a written opinion?

2            THE COURT:  Nope.  It's what you got today.  It

3    will be an endorsed order saying for the reasons stated in

4    the hearing, I'm denying the motion to dismiss.  No written

5    order.

6            Miss Wages, any questions?

7            MS. WAGES:  I don't have any questions, Your

8    Honor.

9            THE COURT:  Thank you.  We are in recess.

10           (Proceedings concluded at 11:00 a.m.)

11                          - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
UNITED STATES DISTRICT COURT  )
                              )
MIDDLE DISTRICT OF FLORIDA    )
```

## REPORTER CERTIFICATE

     I, Scott N. Gamertsfelder, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the stenographic notes taken by the undersigned in the matter of *PATRICIA KENNEDY vs. GOLD SUN HOSPITALITY, LLC*, Case No. 8:18-cv-842-T-33CPT (Pages 1 through 38), and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


/s/ *Scott N. Gamertsfelder*, RMR, FCRR

*Official Court Reporter*

                 Date: July 20, 2018